IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARNOLD CASTILLO, # R-48852,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| vs.    ) | Case No. 13-cv-460-JPG |
| ) | |
| YOLANDA JOHNSON,    ) | |
| DAVID MITCHELL,    ) | |
| and RICARDO TEJEDA,    ) | |
| ) | |
| Defendants.    ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is serving three 15-year sentences for attempted murder, aggravated battery, and aggravated discharge of a firearm, as well as a seven-year sentence for aggravated battery of a peace officer.  Plaintiff claims that Defendants violated his constitutional rights in connection with a disciplinary report issued against him while he was confined at Stateville Correctional Center ("Stateville") and the subsequent disciplinary hearing which was held at Tamms Correctional Center ("Tamms") after Plaintiff was transferred to that institution.

In his complaint, Plaintiff alleges that "following a violent assault on an officer" on January 11, 2010, Plaintiff was summoned to an interview where he was read his *Miranda* rights (Doc. 1, p. 6).  He chose to remain silent.  He was soon transferred to Tamms.

On March 26, 2010, Plaintiff was served with a disciplinary ticket issued by Defendant Tejeda (of Stateville Internal Affairs).  Plaintiff was charged with violent assault (stabbing an

officer), dangerous contraband (a silver object used in the assault), dangerous disturbance, impeding or interfering with an investigation, intimidation or threats, and unauthorized movement, all in connection with the January 11 attack (Doc. 1, pp. 6, 9, 16-17). In this complaint, Plaintiff takes issue only with the charge of impeding or interfering with an investigation, arguing that this charge was improperly brought in retaliation for his exercise of his constitutional right to remain silent. He notes that the disciplinary ticket later resulted in his criminal prosecution for the assault on the officer (Doc. 1, p. 5).[1]

The hearing on Plaintiff's disciplinary charges was held on March 29, 2010, with Defendant Mitchell chairing the hearing panel (Doc. 1, pp. 9-11). Plaintiff submitted a written statement, requested several witnesses to be called, requested staff assistance to prepare his defense, and requested a continuance of the hearing to allow him to collect evidence and testimony (Doc. 1, p. 6). These requests were denied by Defendant Mitchell. Plaintiff was found guilty of all the charges and was disciplined with placement in indeterminate segregation, the loss of one year of good-conduct credit, a one-year demotion to C-grade, and several other sanctions (Doc. 1, pp. 6, 11). Defendant Johnson (Tamms Warden) approved the disciplinary action.

As relief, Plaintiff requests that the disciplinary charge of "impeding or interfering with an investigation be ruled unconstitutional where Miranda warning is read or when it is probable that criminal prosecution is possible" (Doc. 1, p. 8). He further requests money damages.

Plaintiff attaches as exhibits the Offender Disciplinary Report issued by Defendant

---

[1] Online records of the Illinois Department of Corrections show that Plaintiff was convicted of aggravated battery/bodily harm of a peace officer in Will County Case No. 11-CF-1496. Http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited June 4, 2013). See *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). The Court presumes that this conviction was the result of the prosecution Plaintiff references in the complaint.

Tejeda (Doc. 1, pp. 16-17), and the Final Summary Report issued by the adjustment committee that conducted the hearing and found Plaintiff guilty of the disciplinary charges (Doc. 1, pp. 9-11).  These reports detail the evidence considered by the committee, which included statements of ten confidential sources (inmates), several of whom directly observed Plaintiff attacking the correctional officer (Williams).  Before the attack, C/O Williams had sent a radio request for help because he saw Plaintiff with a weapon (Doc. 1, pp. 10, 16).  The officer who responded to C/O Williams' call found him near Plaintiff's cell, bleeding from his wounds.  C/O Williams stated that Plaintiff was his assailant, and the report documents that he suffered 25 puncture wounds when Plaintiff struck him repeatedly with a silver object.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.  After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

Plaintiff claims that the disciplinary charge for "impeding or interfering with an investigation" was brought by Defendant Tejeda in retaliation for his decision to exercise his right to remain silent rather than answer investigators' questions about the January 11 assault on C/O Williams.  However, Plaintiff was also written up for several more serious infractions for this assault.  The impeding/interfering charge was only one of six charges, and must be viewed in the larger context of these allegations (Doc. 1, p. 9).

A false and unjustified disciplinary charge that is brought against a prisoner in retaliation for the prisoner's exercise of a constitutional right may amount to a violation of his due process

rights. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (after inmate successfully pursued a complaint over racial discrimination, he stated a claim for retaliation when he later incurred false disciplinary charges that had no evidentiary support). However, in Plaintiff's case, the charge that he refused to provide relevant information was not false – Plaintiff himself asserts that he chose to remain silent rather than answer the investigator's questions once he was warned that any statements might be used against him in a criminal prosecution. Of course, there might have been no basis to bring the "impeding/interfering with an investigation" charge if Plaintiff had instead chosen to break his silence. But his claim that this charge was filed in *retaliation* for his choice not to answer questions leads to a circular argument, when Plaintiff's silence is itself the basis for the charge.

Importantly, the Fifth Amendment protection against self-incrimination, which is made applicable to the states through the Fourteenth Amendment, prohibits the government from using a person's assertion of the right to silence against him *in a criminal proceeding*.[2] *Baxter v. Palmigiano*, 425 U.S. 308, 316-17 (1976); *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (right to silence may be asserted in a civil or other proceeding where a statement might incriminate the person in a future criminal prosecution). In contrast, the invocation of the right to remain silent may be used to draw an adverse inference in a non-criminal proceeding. *Baxter*, 425 U.S. at 319-20.

A prison disciplinary proceeding is not a criminal trial and is subject to different procedural rules. *Baxter*, 425 U.S. at 316; *Lenea v. Lane*, 882 F.2d 1171, 1173-74 (7th Cir. 1989). Inmates retain certain due process rights in the context of a disciplinary proceeding, but their rights are "circumscribed by the necessary 'mutual accommodation between [prison]

---

[2] Plaintiff's complaint does not indicate that his silence was used against him in the later prosecution that resulted in his state-court conviction for aggravated battery of a peace officer.

institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Baxter*, 425 U.S. at 321 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Thus, the Supreme Court found in *Baxter* that state officials did not violate a prisoner's constitutional rights when they drew an inference of guilt from the inmate's silence at his disciplinary hearing, so long as there was other substantial evidence to sustain the guilty finding. *Baxter*, 425 U.S. at 316-20.  See also *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 929 (7th Cir. 1983) ("After *Baxter* there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination.").  In light of this precedent, Plaintiff cannot expect that he would be free of all adverse consequences (outside the context of a true criminal prosecution) that might result from his choice to remain silent during the investigation of the assault.

      Taken in the context of the other serious disciplinary charges against Plaintiff and the substantial, indeed overwhelming, evidence of his guilt of the violent assault, possession of dangerous contraband, and other offenses, the guilty finding on the impeding/refusal to provide information charge did not violate Plaintiff's due process rights.  The ruling of the adjustment committee does not allocate any part of Plaintiff's punishment to one or the other of the six infractions.  Instead, the disciplinary sanctions were imposed based on the combined guilty findings on all six charges.  It is hard to imagine that Plaintiff's punishment would have been any lighter if he had been found guilty only of the violent assault, dangerous contraband, dangerous disturbance, intimidation, and unauthorized movement charges, but exonerated of (or never charged with) the offense of refusing to give information.

      Plaintiff alleges that the adjustment committee headed by Defendant Mitchell refused to allow him to call witnesses, and denied his requests for staff assistance and a continuance to

prepare his defense. However, the right to call witnesses is not absolute, and an inmate may not be entitled to a representative or a continuance. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed; if the inmate is illiterate or the issues complex, a staff member or inmate should be appointed to assist him in presenting a defense). The issues in Plaintiff's case were not complex, nor is he illiterate. Assuming for the sake of argument that the denial of witnesses and a continuance failed to comport with the requirements of *Wolff*, the complaint still does not state a claim for deprivation of a liberty interest without due process of law with regard to the charge of impeding/interfering with the investigation.

Under certain circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law, if the punishment was imposed following a flawed disciplinary hearing. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). An inmate's term in segregation may give rise to due process concerns only where the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). Under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175. Plaintiff's initial transfer to Tamms was clearly for the purpose of administrative or investigative segregation, because it occurred prior to the adjudication of the

disciplinary charges. After he was found guilty of all charges, it appears that he remained at Tamms in indefinite disciplinary segregation.

The severely restrictive conditions at Tamms (which has since been closed), as well as the indefinite length of his term of segregation, might trigger further inquiry into Plaintiff's claim for a due process violation, according to the guidelines in *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009), if Plaintiff had been found guilty only of the impeding/interfering charge he challenges herein. *See Westefer v. Snyder*, 422 F.3d 570, 589-90 (7th Cir. 2005) (conditions at Tamms impose atypical and significant hardships). However, it is impossible to separate the discipline imposed on Plaintiff as a result of the impeding/interfering charge from the sanctions he incurred for the more serious assault-related charges, which he does not contest in this action. From all indications, Plaintiff would have received the same punishment regardless of the addition of the impeding/interfering charge. Thus, he does not state a claim for violation of his constitutional rights based on an alleged flaw in the disciplinary hearing that did not increase the length of his segregation term.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Defendants **JOHNSON, MITCHELL,** and **TEJEDA** are **DISMISSED** from this action with prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: June 13, 2013**

s/J. Phil Gilbert
United States District Judge
